### THE CITY OF LINCOLN V. MARIE T. PIRNER.

FILED FEBRUARY 9, 1900.    No. 9,089.

1. **City of First Class: CHARTER: INJURY: DEFECTIVE SIDEWALK: LIABILITY.** The provision of the charter of cities of the first class, requiring real estate owners and occupants to maintain certain sidewalks, and making them liable for injuries occasioned by reason of the defective condition of any such sidewalk, does not relieve such cities from the duty of keeping their streets in good repair and fit for use.

2. ———: NOTICE: SCUTTLE-HOLE. A city, in the absence of actual notice, is not, ordinarily, liable for failing to discover the existence of a defect in a scuttle-hole which had been properly constructed, and was apparently safe and secure.

3. ———: ———: ———: ORDINARY CARE AND PRUDENCE. In such case, the test of liability is, whether the municipal authorities did everything which, under the circumstances, ordinary care and prudence required them to do.

4. **Injury: DEFECTIVE SIDEWALK: DUTY OF CITY'S AGENTS.** Where an injury was occasioned by a defective sidewalk, an omission of duty is not to be inferred from a failure of the agents and servants of the city to search for defects in the sidewalk where there was no reason to suppose defects existed.

5. **Instructions.** An instruction relating to a matter submitted to the jury, and which states correctly a proposition of law applicable to the evidence, is not erroneous.

6. **Statute:** NOTICE. A statute requiring notice to be given to a city of the time, place and cause of an injury resulting from an accident for which it may be liable should receive a liberal construction by the courts.

7. ——: ——: SUFFICIENCY. Such notice is sufficient if the description given and the inquiries suggested by it will enable the agents and servants of the city to find the place where the accident happened.

ERROR from the district court of Lancaster county. Tried below before HOLMES, J. *Affirmed.*

*Joseph R. Webster* and *John P. Maule,* for plaintiff in error, argued that the evidence did not make a case of negligence against the city; and that there was no proof to charge the city with notice of defects. See *Cooper v. Milwaukee,* 72 N. W. Rep., 1130; *Hanscom v. Boston,* 141 Mass., 242; *Wakeham v. St. Clair Tp.,* 51 N. W. Rep., 696; *Gubasko v. New York,* 1 N. Y. Supp., 215; *Lohr v. Philipsburg,* 30 Atl. Rep., 822; *Burns v. Bradford,* 20 Atl. Rep., 998; *Hart v. Brooklyn,* 36 Barb., 226; *Dewey v. Detroit,* 15 Mich., 307; *Denver v. Saulccy,* 38 Pac. Rep., 1098; *Jackson v. Boone,* 20 S. E. Rep., 46; *Dittrich v. Detroit,* 57 N. W. Rep., 125.

The city charter, as amended in 1899, makes the lot-owner liable primarily, and casts obligation on him to keep the walk in repair; and thereby relieves the city of liability. The theory of all former decisions, holding cities liable for defective sidewalks, had been based on the duty of the city to *exercise its granted powers,* no *duty* being elsewhere imposed. But this provision imposed elsewhere, on the lot-owner, this duty before impliedly resting on the city. The duty, having been thus expressly cast on the owner, no longer rests on the city, by any rational implication. The city was merely the agent or political arm of the state, whereby the enforcement of this obligation might be *coerced.* Under this form of statute, municipal liability could not logically be held to exist. Under the former statute the courts held a

city liable from a sort of necessity, arising from reasons of public policy, as the liability was imposed nowhere else; and powers were given the city to impose it on the owner. If the city failed to exercise the power efficiently, it was itself held liable—the liability being by statute imposed nowhere else. Now that the obligation was directly imposed on the owner, the reason for the rule of municipal liability was gone. Hence the question of municipal liability, under this act, was a new one, arising in this case as one of first intention, not controlled by decisions made under the former law. Counsel cited *Arkadelphia v. Windham*, 49 Ark., 139; *Winbigler v. Los Angeles*, 45 Cal., 36; *Young v. Charleston*, 20 S. Car., 116; *Detroit v. Blackeby*, 21 Mich., 84; *Pray v. Jersey City*, 32 N. J. Law, 394; *French v. Boston*, 129 Mass., 592; *Marquette v. Cleary*, 37 Mich., 296; *Morgan v. Hallowell*, 57 Me., 375; *Jones v. New Haven*, 34 Conn., 13.

In case of a latent defect, not obvious to the passer-by, there was no presumption of notice from mere lapse of time. The city was not a warrantor of safety for one using the street, nor was it bound to make inspection for detection of latent defects. The nature of municipal organization and action was such, and the condition of a crowded urban community such, that constant and critical inspection for latent defects was never imposed and could not reasonably be required. Counsel cited *Cooper v. Milwaukee*, 72 N. W. Rep., 1130, decided November 16, 1897.

*N. C. Abbott* also appeared of record for plaintiff in error.

*Tibbets Bros., Morey & Anderson*, for defendant in error, argued that the notice, being definite enough to enable authorities to find the place, was sufficient. Counsel cited *Fopper v. Wheatland*, 18 N. W. Rep. [Wis.], 514; *Teegarden v. Town of Caledonia*, 50 Wis., 292, 6 N. W. Rep., 875; *Brown v. Town of Southbury*, 1 Atl. Rep.

[Conn.], 819; *Thompson v. Jones*, 4 Wis., 124 [106]; *Worthington v. Hylyer*, 4 Mass., 196; *Wall v. Town of Highland*, 39 N. W. Rep. [Wis.], 560; *Owen v. City of Fort Dodge*, 67 N. W. Rep. [Ia.], 281; *Hein v. Fairchild*, 87 Wis., 258, 58 N. W. Rep., 413; *Fuller v. Hyde Park*, 37 N. E. Rep. [Mass.], 782; *Mecklem v. Blake*, 19 Wis., 419, 397*; *Sargent v. Lynn*, 138 Mass., 599; *Lyman v. Hampshire*, 138 Mass., 74; *Tenny v. Beard*, 5 N. H., 58.

The petition was sufficient, and there was no variance between the facts stated in the petition and the proof.

Counsel last named, together with *W. E. Stewart*, in a supplemental brief cited Compiled Statutes, 1899, p. 200; *City of Lincoln v. Grant*, 38 Nebr., 369; *City of Lincoln v. Finkle*, 41 Nebr., 575.

SULLIVAN, J.

Marie T. Pirner fell through a coal-hole in the sidewalk on P street in the city of Lincoln, and as a result of the accident sustained injuries, for which she was awarded damages in an action brought against the city in the district court of Lancaster county. The purpose of this proceeding is to secure a reversal of the plaintiff's judgment. The defendant claims exemption from liability under the following provision of its charter: "It is hereby made the duty of all real estate owners and, occupants to keep the sidewalks along the side or in front of the same in good repair, free from snow, ice and other obstructions, and they shall be liable for all damages or injuries occasioned by reason of defective condition of any sidewalk." The claim that this provision relieves cities of the class to which it relates from the duty of maintaining their sidewalks and keeping them safe and fit for use was fully considered in *City of Lincoln v. O'Brien*, 56 Nebr., 761, and decided adversely to the contention of the defendant.

It is next contended that the court erred in charging the jury on the subject of constructive notice. The law undoubtedly is, as claimed by counsel for defendant, that

a city, in the absence of actual notice, is not, ordinarily, liable for failure to discover the existence of a defect in a scuttle-hole which has been properly constructed and is apparently safe and secure. The action being grounded on negligence, the test of liability is whether the municipal authorities did everything which, under the circumstances, ordinary care and prudence required them to do; and the rule is that an omission of duty is not to be inferred from a failure to search for defects in a sidewalk where there is no reason to suppose defects may be found. See *Cooper v. City of Milwaukee*, 97 Wis., 458, 72 N. W. Rep., 1130; *Duncan v. City of Philadelphia*, 173 Pa. St., 550; *Hanscom v. City of Boston*, 141 Mass., 242. The jury were told that if the scuttle-hole in which the plaintiff was injured had remained in a defective condition for such a length of time that the authorities, in the exercise of ordinary diligence, should have discovered the defect, notice to the defendant would be presumed, and proof of actual notice would not be necessary to entitle the plaintiff to recover. This instruction was not erroneous. It imposed no duty upon the city beyond that of ordinary care. It did not, it is true, cover the entire question, but it laid down a correct proposition of law applicable to the evidence, and was not in any respect misleading, especially when considered in connection with the fourth paragraph of the charge, which is as follows: "Negligence is the gist of this action and the burden of proving the negligence on the part of the defendant city, as alleged in plaintiff's petition is upon the plaintiff, and before she would be entitled to recover in this action, she must prove the negligence so alleged in her petition on the part of said defendant, by a fair preponderance of the evidence, and in this case, if you find from the evidence that the said scuttle-hole in controversy was constructed in such manner as was considered, exercising ordinary reason and prudence, ordinarily safe, to persons passing along and over the same, using ordinary care and diligence, or that said scuttle-hole

became out of repair and became unsafe and defective,
and that said defendant city through its authorities,
had no knowledge of the same, and that such defect-
ive condition had not existed a sufficient length of
time or that said defective condition existed in such
manner, that by the exercise of ordinary care and dili-
gence, the said defendant city could not have known it,
then and in that event the said defendant city would not
be liable and your verdict should be accordingly." By
the instruction quoted the jury were informed, in unmis-
takable terms, that, if the defective condition of the coal-
hole was of such a character that the city authorities
could not have discovered it by the exercise of ordinary
care, the city would not be liable. In other words, the
right of the plaintiff to a verdict in her favor was, by
the fourth instruction, made to depend upon the accident
having resulted from a defect in the sidewalk which was
so evident and open to view that actual knowledge of it
must, in the usual course of events, have reached the
agents and servants of the city, if they had faithfully
performed the duty imposed upon them by law in seeing
that the public streets were safe for those having occa-
sion to use them. The jury, following the instructions of
the court, could not have found for the plaintiff without
first finding that the defect in the sidewalk was a visible
defect—one which ought to have been discovered and
remedied by the city authorities before the accident-hap-
pened. The conclusion of the jury upon this point is a
just one. It is an eminently fair deduction from all the
evidence in the case.

The only other assignment of error which we shall
notice challenges the legal sufficiency of the statement,
or account, of the accident filed by the plaintiff in the
office of the city clerk. The statute provides that "to
maintain an action against said city for any unliquidated
claim it shall be necessary that the party file in the office
of the city clerk, within three months from the time such
right of action accrued, a statement giving full name and

the time, place, nature, circumstances and cause of the injury or damage complained of." See Compiled Statutes, 1899, ch. 13a, sec. 36. The notice given by the plaintiff described the place of the accident as being "in front of lot 13, in block 45 on 'P' street in the city of Lincoln, near the west side of what is commonly known as the Carr block." The description was in all respects accurate, except that the number of the block should have been 34 instead of 45. Whether there was a block numbered 45 abutting on P street does not appear. Although the notice was ambiguous, it conveyed to the city authorities, with reasonable definiteness, a description of the place where the accident happened, and was, therefore, sufficient. It was said, in *City of Lincoln v. O'Brien*, *supra*, that the statute is a harsh one and should be liberally construed by the courts. The rule of construction to be deduced from the adjudged cases is that if the description given and the inquiries suggested by it will enable the agents and servants of the city to find the place where the accident occurred, there is a substantial compliance with the law. See *City of Lincoln v. O'Brien*, *supra; La Crosse v. Melrose*, 22 Wis., 459; *Harder v. Minneapolis*, 40 Minn., 446. The Carr block, according to the evidence, is a well known building on P street in the city of Lincoln, and the coal-hole described in the notice was near the west side of it. This being so, we can not believe that any person possessed of ordinary powers of perception could have failed to locate the place of the accident, if he had made an honest effort so to do. It would be a singularly heavy-witted and purblind official who, with the plaintiff's notice in his hand, could not go out and readily find the *locus in quo*. In the absence of proof that there was a block numbered 45 on P street, there is nothing to indicate that the notice had even a slight tendency to mislead. The erroneous part of the description was mere harmless surplusage. There is no reversible error in the record, and the judgment is, therefore,

AFFIRMED.